**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

TINA M. SEGARRA,

Plaintiff,

vs. No. CIV-02-1413 JB/LFG

JOHN E. POTTER, Postmaster General of the United States,

Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Plaintiff's Motion to Compel Discovery and for Sanctions, filed January 28, 2004 (Doc. 35). The primary issue is whether the Court should compel the Defendant to produce a witness' personnel file and other documents related to that witness. Because the Court finds the information relevant and also concludes that it can protect any confidentiality interests, the Court will grant the motion in part, set some terms of conditions for disclosure, and deny the motion in part.

**FACTUAL BACKGROUND**

Segarra is a long-term letter carrier for the United States Postal Service ("USPS"). She is stationed at the Highland Station in Albuquerque. She has been a union steward for several years.

In 1999, a supervisor named Rosarita Archuleta arrived at Highland Station and began a campaign of harassment and discrimination against Segarra. Several witnesses will testify that Archuleta was hostile to women carriers in general and to Segarra in particular. The union president, Bill Prestein, will testify that Archuleta garnered an unusual number of complaints and grievances at Highland Station, was transferred out in part because of them, and is now accumulating more

grievances and complaints at her new location. The Defendant denies that Archuleta was transferred out of Highland Station in part because of the unusual number of complaints and grievances at that station. See Defendant's Response to Plaintiff's Interrogatory No. 3. The parties have therefore put into issue why Archuleta was transferred.

It is Segarra's contention that Archuleta discriminated against her on the basis of her gender. It is the Defendant's defense that Archuleta treated men and women the same. It is also Segarra's assertion, supported by several witness, that Archuleta was vindictive and retaliatory against those who challenged her misconduct. The Defendant argues that Archuleta had legitimate reasons for her actions against Segarra.

Segarra contends that there is a history of the USPS shielding and transferring renegade and troublesome supervisors. Segarra contends that this practice has caused dire consequences to some of its work force.

**PROCEDURAL BACKGROUND**

Segarra served her Interrogatories and Request for Production of Documents on Defendants by mail on November 24, 2003. In discovery, Segarra requested Archuleta's Official Personnel File ("OPF"). See Request for Production No. 1. She also requested the names of people who filed grievances and other complaints, administrative and judicial, against Archuleta or named her as a subject of a complaint during the past five years. See Interrogatory No. 2. She also requested copies of the grievances and complaints. See Request for Production No. 2. Segarra also seeks the names of witnesses who have given statements about this matter and copies of the statements themselves. See Interrogatory No. 4; Request for Production No. 3.

Segarra asserts that the Defendant responded with no substantive information, but with

boilerplate objections and also objected on the basis of confidentiality. See Defendant's Response to Plaintiff's Request for Production of Documents; Defendant's Response to Plaintiff's Interrogatories. The Defendant has refused to produce Archuleta's OPF, copies of grievances and complaints, or statements regarding the claims and defenses in this case. The Defendant objected to releasing the names of persons who have filed complaints against Archuleta. The Defendant also refused to divulge the names of witnesses who have given statements about this matter on the basis of privilege.

Upon receipt of the Defendant's response, Segarra's counsel wrote the Defendant's counsel, seeking to resolve this discovery dispute. See Letter from Hannah B. Best to Michael Hoses (served January 5, 2004). Segarra's counsel indicated that she would proceed with a motion to compel, but invited the Defendant to obviate the confidentiality concerns by a protective order. Segarra represents that, in a follow-up telephone call, the Defendant's attorney promised to respond to Segarra's January 5, 2004 letter in writing to the offer of a protective order, but did not do so. Segarra argues that the Defendant's conduct is dilatory and in bad faith.

On January 8, 2004, before taking Segarra's deposition, the Defendant's counsel informed Segarra's counsel that Archuleta would not authorize the release of her OPF because it contained confidential information having no bearing on the issues in this case. The Defendant's counsel also informed Segarra's counsel that he had reviewed the OPF and agreed with Archuleta's assessment regarding the contents of her file. As a compromise, the Defendant's counsel offered to submit the Archuleta file to Court for an *in camera* review and inspection to determine whether the OPF contained relevant information or information calculated to lead to the discovery of admissible evidence.

The Defendant represents that Segarra's counsel rejected this offer. Segarra states that, upon the Defendant's offer to submit the Archuleta file to the Court for an *in camera* inspection, Segarra's counsel agreed and asked the Defendant's counsel to make the arrangements and confirm them in writing. The Defendant's counsel did not send such a letter or provide written conformation of submission of the OPF to the Court for an *in camera* review.

Accordingly, Segarra proceeded with her motion to compel. Segarra moves the Court to compel the Defendant to produce the discovery she requested and to impose sanctions against the Defendant for necessitating this motion and for not conducting discovery in good faith. The Defendant opposes this motion.

## LEGAL ANALYSIS

### I. THE COURT WILL ALLOW SEGARRA AN EXTENSION OF TIME FOR FILING HER MOTION TO COMPEL, BUT WILL DENY THE MOTION FOR SANCTIONS AS UNTIMELY.

Rule 26.6 of the local rules provides that a party served with objections to an interrogatory or request for production of documents "must proceed under D.N.M.LR-Civ. 37.1 within twenty (20) calendar days of service of an objection unless the response specifies that documents will be produced or inspection allowed." D.N.M.LR-Civ. 26.6. Rule 26.6 also states that: "Failure to proceed within this time period constitutes acceptance of the objection. For good cause, the Court may *sua sponte* or on motion by a party, change the twenty (20) day period." Id.

Segarra needed to proceed under rule 37.1 by no later than January 21, 2004. Segarra filed her motion, however, on January 28, 2004. The Defendant argues that, because the Motion to Compel Discovery and for Sanctions is untimely, Segarra has accepted the Defendant's objections.

Although the party seeking discovery must bring motions to compel within 20 days of

receiving timely objections, the rules also require the parties to attempt to make a good faith effort to resolve discovery disputes before the moving party brings the motion. In the interests of justice, and in an attempt to decide the motion on the merits, the Court will consider the motion to compel timely. There is some dispute whether Segarra's counsel thought the Defendant's counsel was working out its objection to the discovery. Segarra's counsel complied with the portion of the rule requiring good faith discussions, but the Defendant may not have kept its promises to cooperate. In any event, Rule 26.6 of the local rules permits the Court to enlarge, for good cause, the twenty day period. See D.N.M. LR-Civ. 26.6. Segarra makes a request for an extension, and the Court will grant an extension for the motion to compel.

The extension of time, however, will not apply to the portion of the motion requesting sanctions. While the Court believes that an extension of time is appropriate with respect to the motion to compel discovery responses, the motion for sanctions presents a different issue. Because the Plaintiff did not comply with the rules, she may not affirmatively invoke those same rules in an effort to punish the Defendant. The Court will deny that portion of the motion without reaching the merits.

## II. THE COURT WILL SUSTAIN THE DEFENDANT'S OBJECTION REGARDING THE PRODUCTION OF EEO COMPLAINTS BASED ON CONDUCT OTHER THAN GENDER DISCRIMINATION AND RETALIATION, BUT WILL OVERRULE THE REMAINDER OF THE DEFENDANT'S OBJECTIONS.

Segarra appears to concede that confidentiality may be a legitimate objection. In her letter to defense counsel, she suggested that the Defendant produce the OPF and the names of complainants against Archuleta pursuant to a protective order. See Letter from Hannah Best to Michael Hoses. But the Defendant has not provided the Court with legal authority to support its suggestion that the

allegedly confidential information is protected in a lawsuit. With respect to the Defendant's other objections, the Court believes that there are ways to address the Defendant's concerns and still provide the Plaintiff with necessary discovery.

**A. REQUEST FOR PRODUCTION NO. 1**

In Request No. 1, Segarra seeks the production of Archuleta's OPF. That Archuleta is a witness in this case may not, alone, justify granting Segarra automatic access to Archuleta's OPF. See Haselhorst v. Wal-Mart Stores, Inc., 163 F.R.D. 10, 11 (D. Kan. 1995)(finding that blanket request for personnel files of any potential witness or other employee whose name is mentioned in discovery is unwarranted; the mere fact that a person may be a witness in a case does not automatically warrant access to their personnel file). The particular claims at issue here, however, may make the file relevant. Archuleta is more than a witness in this case; she was originally named as a defendant, and her conduct forms the basis of the lawsuit. See Complaint for Violation of Civil Rights, filed November 7, 2002 (Doc. 1)(naming Rosarita Archuleta as defendant in her official and individual capacities); First Amended Complaint for Violation of Civil Rights, filed April 18, 2003 (Doc. 6)(same).

> Relevance in the discovery context is quite broad, and necessarily so where the central issue concerns the motive or intent behind the employment decision, which often must be inferred from other facts . . . . [I]t is not too strong to say that a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action.

Gatewood v. Stone Container Corp., 170 F.R.D. 455, 458 (S.D. Iowa 1996)(citation and internal quotation marks omitted). Segarra contends that complaints by other men and women are relevant to both her discrimination and retaliation claims. She further argues that, being relevant, the complaints of both men and women are discoverable.

Segarra maintains that evidence showing a pattern of discrimination against a protected group is not only discoverable, but admissible. The Court does not need to decide admissibility on this motion. It is sufficient here to note that a pattern of preference for one group over another does not have to compromise the whole picture, but pattern may be an important piece of the whole picture and relevant to prove state of mind.

Under Ortiz v. Norton, 254 F.3d 889 (10th Cir. 2001), such pattern evidence could support an inference that the decision-maker harbored a bias against female workers which might have affected other decisions, including the decisions adverse to Segarra. See id. at 896. In Estes v. Dick Smith Ford, Inc., 856 F.2d 1097 (8th Cir. 1988), overruled on other grounds by, Foster v. University of Ark., 938 F.2d 111 (8th Cir. 1991), the United States Court of Appeals for the Eighth Circuit stated:

> Circumstantial proof of discrimination typically includes unflattering testimony about the employer's history and work practices -- evidence which in other kinds of cases may well unfairly prejudice the jury against the defendant. In discrimination cases, however, such background evidence may be critical for the jury's assessment of whether a given employer was more likely than not to have acted from an unlawful motive.

Estes v. Dick Smith Ford, Inc., 856 F.2d at 1103. Thus, information about claims by other employees of gender discrimination is discoverable and may be "highly relevant." Rodger v. Electronic Data Systems Corp., 155 F.R.D. 537, 541 (E.D. N.C. 1994)("[I]n an employment discrimination context, information regarding prior discrimination suits against the defendant would be highly relevant to evaluate the defendant's employment practices as a whole and provide evidence regarding intent and willfulness."). See Rich v. Martin Marietta Corp., 522 F.2d 333, 344 (10th Cir. 1975)(finding evidence of employment practices are relevant when they likely would prove crucial to the

establishment or rebuttal of a prima facie case); Morrison v. City and County of Denver, 90 F.R.D. 289, 292 (D. Colo. 1978)("Since direct evidence of discrimination is rarely obtainable, plaintiffs must rely on circumstantial evidence and statistical data, and evidence of an employer's overall employment practices may be essential to plaintiff's prima facie case.").

It is sufficient here for the Court to find that such information may lead to admissible evidence about other witnesses, and evidence of gender-based bias by the employer and its agents. The United States Court of Appeals for the Tenth Circuit has held that such evidence is relevant if reasonably tied to the adverse employment action, and the district court has discretion under rule 403 to admit the evidence. See Minshall v. McGraw Hill Broadcasting Co., Inc., 323 F.3d 1273, 1285-86 (10th Cir. 2003); Spulak v. K Mart Corp., 894 F.2d 1150, 1156 (10th Cir. 1990); Gheesling v. Chater, 162 F.R.D. 649, 651 (D. Kan. 1995). The Court concludes it might be an abuse of discretion to deny discovery of such evidence. See Minshall v. McGraw Hill Broadcasting Co., Inc., 323 F.3d at 1285-86; Spulak v. K Mart Corp., 894 F.2d at 1156; Gheesling v. Chater, 162 F.R.D. at 651.

> The City challenges the admission of the Rowe verdict form under Fed. R. Evid. 404(b), which generally excludes evidence of other acts for the purpose of proving a person acted similarly on other occasions. See Sanjuan v. IBP, 160 F.3d at 1297. However, "we have modified this general rule somewhat in the context of employee discharge cases requiring proof of discriminating intent." Coletti v. Cudd Pressure Control, 165 F.3d 767, 776 (10th Cir. 1999); see Sanjuan, 160 F.3d at 1297 (noting that "character evidence is admissible in civil trials to show motive or intent"). For example, in Sanjuan, we concluded the district court correctly applied Fed. R. Evid. 404 when it admitted testimony of other employees about their treatment by the defendant employer because the evidence was relevant to the issue of the employer's discriminatory intent to mistreat employees following their work-related injuries. See id.; Spulak v. K Mart Corp., 894 F.2d 1150, 1156 (10th Cir. 1990)(holding, in an ADEA action, that the district court properly admitted testimony of other employees as probative of the defendant's discriminatory intent); Curtis v. Oklahoma City Pub. Schls. Bd. of Educ., 147 F.3d 1200, 1217 (10th Cir. 1998)(noting that "[t]estimony of other employees may be relevant in assessing an employer's retaliatory intent if the testimony establishes a pattern of retaliatory behavior or tends to discredit the

employer's assertion of legitimate motives").

Schneider v. City and County of Denver, 47 Fed. Appx. 517, 525-26, 2002 WL 1938583, *7 (10th Cir. 2002)(footnote omitted). The evidence sought is thus relevant.

Segarra contends that, if Defendant did not keep a file on Archuleta, it should have. Segarra contends that the Defendant should have every complaint and grievance against this supervisor. Segarra argues that, if the Defendant did not keep these complaints, the Court should require the Defendant to do the work to reconstruct the record against her. In Wards Cove Packing Co., Inc. v. Atonio, 490 U.S. 642 (1989)(litigation ended by amendment of Title VII §105 in 1991), the Supreme Court of the United States acknowledged the difficulty of acquiring such evidence, but promised that "liberal civil discovery rules give plaintiffs broad access to employers' records in an effort to document their claims." Id. at 657. To require less could permit a cover-up.

The Defendant represents that Archuleta's OPF contains, among other things, her application for employment, health benefits and retirement election, and pay increases and awards. The Defendant need not produce these documents. The Defendant also represents, however, that Archuleta's OPF does not contain a list of USPS employees who have filed union grievances or EEO disciplinary actions taken against her. The Court cannot order the Defendant to produce documents that do not exist.

While the Defendant is still willing to submit a copy of Archuleta's OPF to the Court for an *in camera* review to confirm the Defendant's representations, and to determine whether the OPF contains information that is relevant or that is calculated to lead to the discovery of admissible evidence, and while Segarra still accepts this offer, the Court does not think an *in camera* review of the entire file is the most efficient procedure at this time. The Defendant should prepare and produce

to Segarra a detailed privilege log listing and describing all documents in Archuleta's file. After reviewing this opinion, and the privilege log, Segarra should specify the documents she wants. The Defendant should produce, pursuant to a confidentiality order, the requested documents that the Court has indicated should be produced. If there is any dispute, on the confidentiality order, privilege log, or what should be produced, the parties can contact Ms. K'Aun Sanchez, the Court's Courtroom Deputy, and the Court will resolve the remaining dispute, perhaps at that time reviewing *in camera* the remaining documents in dispute.

**B. INTERROGATORY NO. 2/REQUEST FOR PRODUCTION NO. 2**

Interrogatory No. 2 asks the Defendant to identify all individuals who have, within the past five years, filed grievances and/or EEO complaints against Archuleta. Request for Production No. 2 seeks the production of those grievances and/or complaints. The Defendant objected to the discovery on the basis that it was over broad and unduly burdensome. The Defendant also objected on the basis that the Privacy Act protects the information sought. As noted above, the Court has determined that the information sought is relevant or may lead to discoverable information. The Court will therefore address the Defendant's other objections.

**1. <u>UNION GRIEVANCES</u>**

The Defendant represents that hundreds of union grievances are filed with the USPS each year. The vast majority of these grievances relate to matters arising under the Collective Bargaining Agreement between the USPS and the carriers union -- matters having nothing to do with Title VII and claims of discrimination. Although the USPS maintains copies of all grievances that are filed, it does not maintain a centralized data base allowing it to identify complaints against particular supervisors. Consequently, the USPS would have to manually review all complaints to identify those

filed against Archuleta. The Defendant contends that Segarra's request is unduly burdensome.

As to the request for union grievances, the Court is not convinced this production is unduly burdensome. The Defendant did not submit any affidavit to support its contention. The word "hundreds" can mean 200 or many more. The Court does not know; the Defendant did not meet its burden of establishing that the request is unduly burdensome. Only two stations are at issue -- the Highland Station and the Uptown Station, to which Archuleta was transferred after leaving Highland. The Defendant has a choice. The Defendant can make the review itself or can make the grievance files for the time period in question available to Segarra for her review.

The Defendant also objects to this request on the basis that it seeks information protected by the Privacy Act, 5 U.S.C. § 552a, which generally prohibits disclosure of records an agency maintains on individuals. The Court will overrule this objection. Assuming without deciding, that grievance files are covered by the Privacy Act, the Defendant has not offered legal authority for its contention that the Privacy Act would prohibit their disclosure. The Act lists eleven exceptions to the general rule precluding disclosure in the absence of the written consent of the individual to whom the record pertains, one of which is disclosure "pursuant to the order of a court of competent jurisdiction." 5 U.S.C. § 552a(b)(11).

The Defendant has not provided any basis for sustaining its objections. Accordingly, the Court will overrule the Defendant's objections with respect to the grievance complaints. The Defendant is ordered to answer Interrogatory No. 2 and produce documents in response to Request for Production No. 2.

**2. <u>EEO COMPLAINTS</u>**

Segarra also seeks disclosure of EEO complaints against Archuleta. Archuleta, and perhaps

the Defendant's attorney, have knowledge of and/or access to such records. The Defendant argues Segarra' request is overly broad because Segarra seeks the identification of all individuals who have filed EEO complaints against Archuleta, regardless of the basis of each complaint. The Defendant does not see how the identification of individuals filing complaints based on protected categories other than those that Segarra assert -- gender and retaliation -- are relevant or calculated to lead to the discovery of admissible evidence.

The Court agrees that the Defendant should not be required to produce EEO complaints against Archuleta that deal with protected categories other than the ones Segarra asserts in this action. Segarra asserts claims for gender discrimination and retaliation. Complaints based on other types of discrimination are neither relevant nor calculated to lead to the discovery of admissible evidence in this action. Accordingly, the Court will sustain the Defendant's objection to producing complaints related to categories other than gender or retaliation.[1]

The Defendant also argues that Segarra's request is unduly burdensome. The USPS would have to manually review all EEO complaints on file -- approximately 1,500 -- to identify all complainants asserting claims against Archuleta. The USPS local EEO office has two employees, Michael Westervelt (EEO Manager) and Lori Foster (Dispute Resolution Specialist). The Defendant contends that, to comply with Segarra's request, Westervelt or Foster will have to spend approximately three days reviewing current and archived records to identify all complaints. The Defendant maintains that Segarra's request is unreasonable.

The fact that USPS employees will have to spend a significant amount of time gathering the

[1] The Court will order the Defendant to produce EEO complaints filed against Archuleta by both men and women.

requested information does not make the request unreasonable. All discovery imposes a cost. The Court overrules the Defendant's objection of unreasonableness.

Finally, the Defendant objects to Segarra's discovery requests on the basis that the Privacy Act protects the information sought. The Defendant also objects on the basis that disclosure would violate the privacy rights of USPS employees requesting anonymity in connection with their EEO activities. Again, the Privacy Act specifically allows for disclosure pursuant to a court order. The Court thus reaches the same conclusion with respect to the EEO complaints that it reached with respect to the union grievances. The Defendant is ordered to answer Interrogatory No. 2 and produce documents in response to Request for Production No. 2.[2]

**IT IS ORDERED** that the Plaintiff's Motion to Compel Discovery and for Sanctions is granted in part and denied in part:

1. With respect to Archuleta's personnel file, the Defendant shall prepare and produce to the Plaintiff a detailed privilege log listing and describing all documents in the file. The Plaintiff shall then specify what it wants to see. The Defendant shall produce the requested documents, pursuant to a confidentiality order, that the Court has indicated should be produced. If there is any dispute, on the confidentiality order, privilege log, or what should be produced, the parties can contact Ms. K'Aun Sanchez, the Court's Courtroom Deputy, and the Court will resolve the remaining issues in dispute.

2. With respect to the request for grievances, the Defendant shall make the necessary review and respond to the discovery requests, or make the grievance files for the time period in question available to Segarra for her review.

---

[2] The Plaintiff's Interrogatory No. 4 and Request for Production No. 3 requested information concerning all statements given regarding the claims or defenses in this case, as well as copies of the statements themselves. The Defendant objected to these discovery requests and claimed that such statements are protected by the attorney client and attorney work product privileges. Segarra's Memorandum in Support of her motion contains only one line concerning these requests. Neither the Response nor the Reply contain any additional argument on this point. The Court will order the Defendant to produce a privilege log for the statements it believes are protected from discovery on the basis of a privilege. The Plaintiff will then be in a better position to determine whether a dispute exists.

3. With respect to the request for EEO complaints, the Defendant shall produce all EEO complaints against Archuleta, filed by either men or women, on the basis of gender discrimination or retaliation. In the alternative, the Defendant may make those complaints available for the Plaintiff to review.

4. With respect to the request for statements concerning the claims and defenses in this matter, the Defendant shall prepare and produce to the Plaintiff a detailed privilege log listing and describing all statements allegedly protected by the attorney client or work product privileges. The Plaintiff shall then specify which statements she believes are not immune from discovery. If the parties are unable to reach an agreement concerning what should be produced, the parties can contact Ms. K'Aun Sanchez, the Court's Courtroom Deputy, and the Court will resolve the remaining issues in dispute.

5. The Court will deny the Plaintiff's request for sanctions.

James O. Browning
UNITED STATES DISTRICT JUDGE

Counsel:

Hannah B. Best
Hannah Best & Associates
Albuquerque, New Mexico

*Attorney for the Plaintiff*

David C. Iglesias
United States Attorney
Michael H. Hoses
Assistant United States Attorney
Albuquerque, New Mexico

*Attorneys for the Defendant*

OF COUNSEL:

Cynthia Jane Estee
U.S. Postal Service Attorney
Southwest Office, Law Department
United States Postal Service
Dallas, Texas